UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DAVID KUCERA and VICKIE F. FORGETY, )
)
    **Plaintiffs,** )
) No. 3:03-cv-593
v. ) (Phillips)
)
JEFFERSON COUNTY BOARD OF )
SCHOOL COMMISSIONERS, et al., )
)
    **Defendants.** )

## ORDER

**I.    Introduction**

This matter comes before the Court concerning the Defendants' Motion for Summary Judgment. [Doc. 117 & 78]. For the reasons that will follow, the Defendants' Motion will be **DENIED.**

**II.    Statement of the Facts**

For the 2002-2003 school year, Plaintiffs Vickie F. Forgety ("Forgety"), and David Kucera ("Kucera") were employed at the Jefferson County Alternative School. Forgety was a tenured teacher and principle for the alternative school, and Kucera was a non-tenured teacher with a contract for the 2002-2003 school year.

On June 26, 2003, the Jefferson County Board of Education ("Board") met in special

session, and through their action closed the alternative school allegedly due to budgetary concerns. Concurrently, plaintiffs' positions were abolished by this action, and the plaintiffs were thus dismissed as defined by Tenn. Code Ann. § 49-5-511(b). Forgety rejected two teaching positions; requested that her name be placed on the "preferred rehire list" for an administrative or principal position only;[1] drew unemployment for seven months; and ultimately took the principal position in May of 2004 at New Market Elementary School. Kucera did not continue employment with any school, but went back to a former job at Mountain View.

On or about July 10, 2003, the Board acted to contract with former Defendant Kingswood School, Inc. ("Kingswood") to provide alternative school services to Jefferson County students for the 2003-2004 school year.

The Plaintiffs assert that Kingswood is a religious organization and that the Board cannot contract for alternative school services with a religious organization. The Plaintiffs argue that delegating the function of running an alternative school to Kingswood violates their First Amendment rights under the Establishment Clause. The Defendants assert that Kingswood in not solely a religious institution, but Kingswood maintains two distinct identities—a day program that provides secular, alternative, educational services and a residential program that imparts religious teachings.

The Plaintiffs initial complaint argued that, by contracting with Kingswood, the Defendants violated the teachers' 1) First Amendment Establishment Clause rights under the U.S. Constitution and similar rights under article I, section 3 of the Tennessee Constitution; and 2) procedural and substantive due-process rights under the Fourteenth Amendment to the U.S.

---

[1] Forgety never had an entitlement to an administrative position such as principle under the Teacher Tenure Act. *McKenna v. Summer County Board of Education*, 574 S.W.2d 527, 530 (Tenn. 1978); Tenn. Code Ann. § 9-5-511(b)(3).

Constitution and article I, section 8 of the Tennessee Constitution. On November 2, 2006 the Court granted the Defendants' Motion for Summary Judgment pursuant to a finding by the Court that the Plaintiffs lacked standing, denied as moot the defendants' claims of absolute and qualified immunity, and dismissed the action without prejudice. [Doc. 76]. The Plaintiffs appealed the Court's finding to the Sixth Circuit Court of Appeals on December 4, 2006. [Doc. 79]. The Sixth Circuit affirmed the Court's grant of summary judgment to the Board on the teachers' procedural and substantive due-process claims, found that the Board is entitled to legislative immunity, reversed the Court's finding that the Plaintiff's lacked standing to bring their Establishment Clause claims[2], and remanded this mater back to the Court for further proceedings. [Doc. 82].

Consequently, the sole matter left for this Court to consider is whether the Board violated the Establishment Clause of the U.S. Constitution when it contracted with Kingswood to provide alternative school education for the district.

### III. Summary Judgment Analysis

#### 1. The Standard

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The moving party bears the initial burden of production." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Jakubowski v. Christ*

---

[2] The Sixth Circuit found that the Plaintiffs have standing as municipal taxpayers.

*Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In evaluating a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmoving party. *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Palmer v. Cacioppo*, 429 Fed. App'x 491, 495 (6th Cir. 2011) (quoting *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001)).

Here, as the Defendants filed the Motion for Summary Judgment, the Court will construe all reasonable inferences in favor of the Plaintiffs; furthermore, the Defendants will need to prove that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a matter of law. *Id.*

### 2. Various Tests

The seminal Supreme Court case discussing the Establishment Clause is *Lemon v. Kurtzman,* wherein the Supreme Court reasoned that the "three main evils against which the Establishment Clause was intended to afford protection are sponsorship, financial support, and active involvement of the sovereign in religious activity." 403 U.S. 602 (U.S. 1971). Even so, the

Court does not call for total separation between church and state, for that is not possible in an absolute sense and some relationship between government and religious organizations is inevitable. *Id.*

When interpreting the Establishment Clause, the federal courts demonstrate a low degree of homogeneity. In *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.,* Justice Clarence Thomas writes a pointed critique of the inconsistency with which the Establishment Clause is scrutinized; Justice Thomas writes,

> Unsurprisingly, the Tenth Circuit relied on its own precedent, rather than on any of this Court's cases, when it selected the Lemon/endorsement test as its governing analysis. Our jurisprudence provides no principled basis by which a lower court could discern whether Lemon/endorsement, or some other test, should apply in Establishment Clause cases. Some of our cases have simply ignored the Lemon or Lemon/endorsement formulations. See, e.g., Zelman v. Simmons-Harris, 536 U.S. 639, 122 S. Ct. 2460, 153 L. Ed. 2d 604 (2002); Good News Club v. Milford Central School, 533 U.S. 98, 121 S. Ct. 2093, 150 L. Ed. 2d 151 (2001); Marsh v. Chambers, 463 U.S. 783, 103 S. Ct. 3330, 77 L. Ed. 2d 1019 (1983). Other decisions have indicated that the Lemon/endorsement test is useful, but not binding. Lynch v. Donnelly, 465 U.S. 668, 679, 104 S. Ct. 1355, 79 L. Ed. 2d 604 (1984) (despite Lemon's usefulness, we are "unwillin[g] to be confined to any single test or criterion in this sensitive area"); Hunt v. McNair, 413 U.S. 734, 741, 93 S. Ct. 2868, 37 L. Ed. 2d 923 (1973) (Lemon provides "no more than helpful signposts"). Most recently, in Van Orden, 545 U.S. 677, 125 S. Ct. 2854, 162 L. Ed. 2d 607, a majority of the Court declined to apply the Lemon/endorsement test in upholding a Ten Commandments monument located on the grounds of a state capitol. Yet in another case decided the same day, McCreary County v. American Civil Liberties Union of Ky., 545 U.S. 844, 859-866, 125 S. Ct. 2722, 162 L. Ed. 2d 729 (2005), the Court selected the Lemon/endorsement test with nary a word of explanation and then declared a display of the Ten Commandments in a courthouse to be unconstitutional. See also Van Orden, supra, at 692, 125 S. Ct. 2854, 162 L. Ed. 2d 607 (SCALIA, J., concurring) ("I join the opinion of THE CHIEF JUSTICE because I think it accurately reflects our current Establishment Clause jurisprudence--or at least the Establishment Clause jurisprudence we currently apply some of the time"). Thus, the Lemon/endorsement test continues to "stal[k] our Establishment Clause jurisprudence" like "some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried." Lamb's Chapel v. Center Moriches Union Free School Dist., 508 U.S. 384, 398, 113 S. Ct. 2141, 124 L. Ed. 2d 352 (1993) (SCALIA, J., concurring in judgment)

132S. Ct. 12, 14-15 (2011) (Thomas, C, dissenting). Notwithstanding the apparent opacity of this subject, this Court will apply a version of the Lemon Test that has been most recently sanctioned by the Sixth Circuit.

The Sixth Circuit, as recently as August 1, 2012, reaffirmed its support for a form of the Lemon Test, writing that, "Although it has lost some of its luster, the test from *Lemon*....as refined by later Supreme Court opinions,[3] guides our Establishment Clause analysis." *Satawa v. Macomb County Rd. Comm'n*, 689 F.3d 506, 526 (6th Cir. Mich. 2012). In *Satawa,* the court writes a slightly different version of the test. "Under today's Lemon Test, we ask: (1) whether the government's predominant purpose was secular; (2) whether the government action has the purpose or effect of endorsing religion, ibid., and (3) whether the action fosters an excessive entanglement with religion. If we cannot answer 'yes' to the first question and 'no' to the second two, the challenged action violates the Establishment Clause." (Failure under any of Lemon's three prongs deems governmental action violative of the Establishment Clause.) (internal quotation marks and citations omitted)). *Satawa v. Macomb County Rd. Comm'n*, 689 F.3d 506, 526 (6th Cir. Mich. 2012); *ACLU of Ohio Found., Inc.* v. *Ashbrook*, 375 F.3d 484, 490 (6th Cir. 2004) (quoting *Lemon*, 403 U.S. at 612-13). *See also McCreary Cnty. v. ACLU of KY.,* 545 U.S. 844, 859 (2005); *Stone v. Graham*, 449 U.S. 39, 40, 101 S. Ct. 192, 66 L. Ed. 2d 199 (1980); *ACLU v. McCreary Cnty*., 607 F.3d 439, 445-46 (6th Cir. 2010) ("*McCreary [\*\*\*9] II*"); *ACLU v. Mercer Cnty*., 432 F.3d 624, 635 (6th Cir. 2005); *ACLU v. McCreary Cnty*., 354 F.3d 438, 446 (6th Cir. 2003) [\*\*15] ("*McCreary I*"); *Adland v. Russ,* 307 F.3d 471, 478 (6th Cir. 2002);

---

[3] The difficulty of applying *Satawa*, and many other cases, is that the phrase "as refined by later Supreme Court opinions" assumes that there has been coherent evolution of the Lemon Test. To the contrary, this Court agrees with Justices Thomas and Scalia that Establishment Clause jurisprudence has been haphazard.

*Baker v. Adams Cnty.*, 310 F.3d 927, 929 (6th Cir. 2002); *Washegesic v. Bloomingdale Pub. Sch.,* 33 F.3d 679, 681-82 (6th Cir. 1994).

Since *Satawa* is the most recent form that the Lemon Test has taken, the Court will use the contemporary language of *Satawa* in favor of the language used in the above-cited antecedent cases, including most notably, *Lemon* itself.[4] Consequently, the question before the Court in the instant matter is: (1) whether the Board's predominant purpose was secular; (2) whether the contract with Kingswood has the purpose or effect of endorsing religion; and, (3) whether contracting with Kingswood fosters an excessive entanglement with religion. As this matter is presently at the summary judgment stage, the Court shall construe all controverted facts in favor of the nonmovant, and will grant the Defendants' Motion only if there exists no genuine issues of material fact.

### 3. Analysis

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…." U.S. Const. amend. I. This Amendment has been made applicable to the states by passage of the Fourteenth Amendment. The Defendants request that the Court grant summary judgment asserting that "Kingswood is a private, non-profit organization which provides two distinct services—a non-sectarian, alternative educational service ('day program') for suspended or expelled students and a residential placement service ('residential program') for displaced, neglected, abused, and/or addicted children." [Doc. 118 at 4]. The Plaintiffs central argument slightly shifts the discussion of entanglement to a discussion of improper delegation. [Doc. 86].

---

[4] The actual test used in Lemon was "First the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612-13

The Plaintiffs argue that governmental delegation to a religious entity violates the Establishment Clause, even if there has been no religious teaching. [Doc. 86 at 5].

The Plaintiffs further assert that there is no meaningful distinction between Kingswood's day and residential programs. "the Defendant concedes that it delegated the administration of its Alternative School to Kingswood Academy. It is likewise undisputed that Kingswood Academy is a religious institution with a Christian mission." [Doc 86 at 8]. In support of this charge, the depositions of Chuck Cagle and Darrell M. Helton are cited. *Id.* In Mr. Helton's deposition, he is asked in reference to a fundraising letter sent by Kingswood to potential donors in 2006, "And in it, let me just paraphrase this, Kingswood School is unique because we offer our children a Christian environment of love and encouragement, is that correct?" *Helton Depo.*, p. 9. Mr. Helton responded affirmatively. *Id.* Later in the conversation, the questioner asks "And then down in the last paragraph it says 'we are a non-profit faith based ministry that operates on private and corporate contributions.' Is that correct?" *Id.* Mr. Helton responded, "That's correct." *Id.* The deposition of Mr. Cagle asks "Are you aware that Kingsowood School is a Christian academy?" Mr. Cagle replies, "Yes." *Cagle Depo.,* p. 27.

While the Court acknowledges that the portions of the depositions cited by the Plaintiff do not establish that Kingswood is *solely* a religious entity, or that Kingswood's residential and day programs are not meaningfully distinct; nevertheless, the Plaintiffs have raised at least one genuine issue of material fact; that is, whether Kingswood's day and residential programs are meaningfully distinct as to avoid the third, or excessive entanglement, prong of the Lemon Test.

The nature of the day program has been properly called into question. It is admitted by all parties that the residential program maintains a religious character. From examining the record, it

is unclear whether the day program is actually a distinct enterprise. This Court, for the purposes of summary judgment, will resolve all facts in favor of the nonmovant. Consequently, if the Court accepts that there is no meaningful distinction between the admittedly religious residential program and the day program[5], then the delegation[6] of governmental function to, and excessive entanglement with, Kingswood Academy would be an unlawful violation of the Establishment Clause as measured by the third[7] prong of the Lemon Test.

### VII. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. 117 & 78] is **DENIED**.

**IT IS SO ORDERED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge

---

[5] There is ample evidence on the record to support this assumption.

[6] In a brief submitted to the Court *amicus curiae,* the Tennessee Education Association argues that "The Contract between the Board and Kingswood was entered into by the Board without legislative authorization, without authorization from the State Board of Education, and in violation of the plenary power over public education granted to the state and the General Assembly under Article XI, Section 12 of the Tennessee Constitution and Tenn. Code Ann. §§ 49-1-101 and 49-1-102." Amicus Curiae Brief by Richard L. Colbert on behalf of Tennessee Education Association at 3, Forgety v. Jefferson County School Board Commissioners et. al., 3:04-cv-275; 3:03-cv-593, Doc. 72.

[7] It is possible that the relationship between the Board and Kingswood also violates the second prong of the Lemon Test; however, this line of argument was not adequately briefed by either party.